## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA RAY TYNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF LANCASTER, PRIMECARE | : | |
| MEDICAL INC., CHERYL STEMBERGER | : | |
| and LORI HEHNLY | : | NO. 18-3306 |

### MEMORANDUM

**Savage, J.**                                                                                                **July 27, 2020**

*Pro se* plaintiff Joshua Ray Tyner brought this § 1983 action based on the medical treatment he received for a knee injury suffered while incarcerated at Lancaster County Prison. Tyner asserts claims against PrimeCare Medical Inc. ("PrimeCare"), which provided medical care and treatment to inmates of the prison pursuant to a contract with the county, and Lori Hehnly, a licensed certified nurse practitioner employed by PrimeCare.[1] Tyner claims that he received inadequate medical treatment following his knee injury.

The defendants have moved for summary judgment. They argue the treatment they provided, including an x-ray, outside orthopedic consultations and an MRI, was adequate, and there is no evidence suggesting deliberate indifference to his serious medical condition. PrimeCare also argues that Tyner cannot establish a *Monell* claim because he

---

[1] Tyner originally asserted claims against the County of Lancaster ("County"), Warden Cheryl Stemberger, PrimeCare and Hehnly. Pl.'s Compl. (ECF No. 1). We dismissed the County, Stemberger and PrimeCare pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because the complaint failed to state a claim against them. *See* June 6, 2019 Memorandum Opinion (ECF No. 25). We found the complaint stated a claim against Hehnly. *Id.* Tyner filed an amended complaint on August 15, 2019. Pl.'s Am. Compl. (ECF No. 31). Tyner's amended complaint cured the original complaint's defects as to PrimeCare, but not as to the County or Stemberger.

has not shown that PrimeCare has a policy or custom exhibiting deliberate indifference to a serious medical condition.[2]

For the following reasons, we shall grant summary judgment to the defendants.

## FACTUAL BACKGROUND[3]

On February 27, 2018, Tyner injured his left knee while playing basketball at the Lancaster County Prison.[4] The medical staff took him in a wheelchair to the medical department, where he was examined by nurse Alura Hudzik.[5] Hudzik called Dr. William Cattell, the on-call medical provider, who ordered an x-ray and prescribed naproxen and ice for pain relief.[6] The x-ray showed no fractures and "no other significant bony joint or soft tissue abnormality."[7]

---

[2] Tyner also claims that the defendants did not disclose their evidence to him during discovery, putting him at a disadvantage in opposing their motion for summary judgment. Pl.'s Resp. to Defs.' Mot. for Summ. J. at 1-3 (ECF No. 57). The defendants respond that they answered Tyner's discovery requests on February 5, 2020, providing him with PrimeCare's contract with Lancaster County and PrimeCare's policies for Access to Care, Non-Emergency Health Care Requests and Services, and Hospital and Specialty Care. Defs.' Reply at 1-2 (ECF No. 56). *See also* Defs.' Resp. to Pl.'s Mot. to Compel Exh. A (ECF No. 49). The defendants state that they had previously produced to Tyner his Lancaster County Prison medical records, copies of Pennsylvania Department of Corrections and outside consultation records received pursuant to subpoenas, and copies of their expert's report, curriculum vitae, testimony history, and invoice for fees. Defs.' Reply at 1-2.

[3] Tyner has not submitted a Statement of Disputed Facts in opposition to the defendants' Statement of Undisputed Facts as required by the Court's Scheduling Order. Oct. 23, 2019 Scheduling Order at ¶ 6(b) (ECF No. 38). Instead, he submitted his own Statement of Undisputed Facts. Pl.'s Statement of Undisputed Facts (ECF No. 57) ("Pl.'s SUF"). We shall consider his Statement of Undisputed Facts as contesting the defendants' Statement of Undisputed Facts.
In analyzing the record for purposes of the defendants' motion, we shall recite as uncontroverted facts the defendants presented that Tyner has not specifically contested. We shall also reference Tyner's allegations, not as true and undisputed, but for context only.

[4] Defs.' Statement of Undisputed Facts Exh. C at PCM00060 (ECF No. 52) ("Defs.' SUF").

[5] Defs.' SUF Exh. C at PCM00060, PCM00114-115.

[6] Defs.' SUF Exh. C at PCM00195.

[7] *Id.* at PCM00068.

Tyner alleges that he was sent back to his normal housing unit in agonizing pain without crutches or a wheelchair.[8] He claims that because the pain was unbearable, he requested further medical attention.[9] Hudzik came to his cell and offered him an ACE bandage.[10] When Tyner asked to go to the emergency room, Hudzik answered that they were not going to take him to the hospital.[11] Tyner accepted the ACE bandage and "suffered excruciating pain for the remainder of the night."[12] He claims that he ended up going more than 29 hours without pain medication.[13]

The next morning, defendant Lori Hehnly examined Tyner.[14] She diagnosed his injury as "structural in nature or a strain."[15] She instructed the administrative assistant responsible for coordinating outside medical treatment to either schedule an orthopedic evaluation as soon as possible or send Tyner to the hospital for further evaluation.[16]

About an hour later, Tyner was taken to Orthopedic Specialists of Lancaster.[17] The physician's assistant who examined him stated that he suspected Tyner tore his anterior

---

[8] Pl.'s Resp. at 3.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 4.

[14] Defs.' SUF Exh. C at PCM00142; Pl.'s Resp. at 3.

[15] Defs.' SUF Exh. A at ¶ 9.

[16] Defs.' SUF Exhs. A at ¶ 10, C at PCM00142.

[17] Defs.' SUF Exh. C at PCM00065.

cruciate ligament ("ACL") and recommended an MRI.[18] The MRI was done on March 1, 2018.[19]

Hehnly examined Tyner again on March 2, 2018.[20] Tyner claims that he told her they suspected a torn ACL, and she immediately asked when he was scheduled to be released.[21] Tyner answered that he did not know.[22] Hehnly recorded Tyner's release date as "unknown" in the records.[23] Hehnly told him that she would increase his pain medication dosage.[24] She also instructed the administrative assistant to schedule future orthopedic appointments as recommended by the orthopedist.[25]

On March 5, 2018, Tyner had a follow-up appointment with the orthopedic specialist who confirmed that he had a torn ACL, acute lateral meniscus tear and a possible lateral collateral ligament injury.[26] The doctor recommended "elective left knee surgery at the patient's convenience."[27]

---

[18] Pl.'s Resp. at 4; Defs.' SUF Exhs. A at ¶ 12, C at PCM0065.

[19] Defs.' SUF Exh. C at PCM00140.

[20] Id.

[21] Pl.'s Resp. at 3-4.

[22] Id. at 4.

[23] Defs.' SUF Exh. C at PCM00140.

[24] Pl.'s Resp. at 4; Defs.' SUF Exh. C at PCM00140-141.

[25] Defs.' SUF Exhs. A at ¶ 17, C at PCM00140-141.

[26] Id. at PCM00218; Pl.'s Resp. at 5.

[27] Defs.' SUF Exh. C at PCM00218.

Hehnly examined Tyner on March 6, 2018.28 She asked Tyner again about his release date, and recorded it as "unknown" in her notes.29 She continued his pain medication and instructed the administrative assistant to schedule his surgery.30 The administrative assistant contacted the specialists and surgery was scheduled for March 20, 2018.31

Tyner claims that PrimeCare's staff refused to administer his pain medication as prescribed during his remaining days at the Lancaster County Prison.32 His sick call slip states that he was supposed to receive Meloxicam four times a day, but the Medication Administration Record shows that he only received it once a day.33 He did not receive it at all on March 7 or March 9.34 He claims that he asked for the medication at every possible opportunity, but he was refused most of the time and threatened with disciplinary action.35

On March 11, 2018, PrimeCare provided a Transfer of Health Information form to the State Correctional Institution at Camp Hill ("SCI Camp Hill").36 The form indicated that Tyner had a left knee injury that required follow-up treatment.37 The form did not indicate

---

28 Pl.'s Resp. at 5; Defs.' SUF Exh. C at PCM00140.

29 Pl.'s Resp. at 5; Defs.' SUF Exh. C at PCM00140.

30 Defs.' SUF Exhs. A at ¶ 24, C at PCM00140.

31 Defs.' SUF Exhs. B at ¶ 5, D at PCM00379.

32 Pl.'s Resp. at 5.

33 *Id.* at 5-6; Pl.'s Resp. Exhs. 7, 9. "Mobic" is the brand name for Meloxicam.

34 Pl.'s Resp. at 6; Pl.'s Resp. Exh. 7.

35 *Id.*

36 Defs.' SUF Exhs. B at ¶ 7, C at PCM00206-207.

37 Defs.' SUF Exhs. B at ¶ 8, C at PCM00206.

that surgery had been scheduled.[38] On March 15, 2018, Tyner was released to the custody of the Pennsylvania Department of Corrections.[39] According to PrimeCare's outside consultation calendar, "SCI" canceled Tyner's surgery.[40]

After Tyner was transferred to SCI Camp Hill on March 15, he spent the next seven days going through the intake process.[41] During intake, he was examined by Jennifer Taylor, a physician's assistant.[42] He claims Taylor told him there was no record of a pending surgery.[43] The next day, she informed him that the prison would schedule his surgery.[44] The Consultation Record Taylor completed on March 26, 2018 states that "[s]urgery was scheduled by County Jail prior to transfer to SCI [Camp Hill] on 3-20-18" and that "procedure was cancelled secondary to transfer to state prison."[45]

Tyner underwent surgery on April 3, 2018.[46] Tyner's follow-up appointments with the orthopedic specialists in April, May and July 2018 showed normal post-operative progress.[47] He reported that his pain and swelling continued to improve and denied "any

---

[38] Defs.' SUF Exh. C at PCM00206-207.

[39] Defs.' SUF Exhs. B at ¶¶ 9-10, D at PCM00379.

[40] Defs.' SUF Exh. D.

[41] Pl.'s Am. Compl. at 9; Pl.'s Resp. at 6.

[42] Defs.' Supp. SUF at Exh. F (ECF No. 53).

[43] Pl.'s Resp. at 6.

[44] *Id.*

[45] Defs.' Supp. SUF Exh. F.

[46] Pl.'s Resp. at 6.

[47] Defs.' SUF Exh. E at 2; Pl.'s Resp. Exhs. 15-18.

pain" or "any complications or setbacks."[48] By December 2018, he was released for full activities with no restrictions.[49]

Tyner filed suit on July 30, 2018.[50] According to Tyner, he received inadequate post-operative care while at SCI Camp Hill that eventually led to permanent atrophy in his left leg.[51] He claims the orthopedic surgeon repeatedly advised the prison of the need for continuous, vigorous and supervised physical therapy, but that he did not receive "professional consistent physical therapy."[52] Instead, he performed exercises on his own, and lost strength in his left leg as a result.[53]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

---

[48] Pl.'s Resp. Exh. 18.

[49] *Id.*

[50] Pl.'s Compl.

[51] Pl.'s Resp. at 6-7.

[52] *Id.* at 7; Pl.'s SUF at ¶¶ 16.

[53] Pl.'s Resp. Exh. 17; Pl.'s SUF at ¶¶ 17.

Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

The gravamen of Tyner's claim is that PrimeCare and Hehnly failed to provide him adequate medical care following his knee injury. He contends that neither Hehnly nor any other PrimeCare staff scheduled his surgery, and they failed to administer his pain medication correctly.[54] Tyner argues that Hehnly's attitude, failure to follow-up with him after initial examinations and questions about his release date demonstrate her deliberate

---

[54] Pl.'s Resp. at 9-11.

indifference to his pain.[55] He also claims that PrimeCare has a policy or custom of denying inmates medication and allowing the transfer of inmates with serious medical conditions to state custody, prolonging their suffering.[56]

The defendants do not contest that Tyner had a serious medical need. They contend he received adequate medical care in the form of an x-ray, an MRI, outside consultations, surgery and post-surgery follow-up.[57] They claim that although Hehnly may have believed Tyner's subjective complaints were not consistent with his injury, the records show that she increased his pain dosage and instructed the administrative assistant to schedule outside consultations and surgery.[58] According to the defendants, the evidence demonstrates that Tyner's surgery was scheduled for March 20, 2018, but SCI canceled and rescheduled it upon his transfer to state custody.[59] They argue that neither Hehnly nor PrimeCare had any role in canceling the surgery, nor in determining when inmates are transferred.[60] They cite their expert report to show the treatment he received was within the standard of care and the short delay in his surgery actually benefitted his post-surgery recovery.[61] They also argue Tyner cannot establish *Monell*

---

[55] *Id.* at 12-13.

[56] *Id.* at 13-15.

[57] Defs.' Mot. for Summ. J. at 9.

[58] Defs.' Reply at 2-3.

[59] Defs.' Mot. for Summ. J. at 9.

[60] *Id.* at 9-10; Defs.' Reply at 3.

[61] Defs.' Mot. for Summ. J. at 10.

liability against PrimeCare because he has not shown PrimeCare has a policy or custom exhibiting deliberate indifference.[62]

### *Deliberate Indifference*

The Eighth Amendment protection against cruel and unusual punishment extends to the prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Failure to provide adequate medical care violates a prisoner's Eighth Amendment right when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104–05. To establish an Eighth Amendment violation based on inadequate medical care, Tyner must demonstrate that he had a serious medical need and prison officials were deliberately indifferent to that need. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citations omitted).

If a condition has been diagnosed by a physician as requiring treatment, it is a serious medical need. *Id.* (quoting *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)). Tyner's knee injury that required treatment was a serious medical need. Thus, we must determine whether there is sufficient evidence from which a reasonable jury could find that the defendants were deliberately indifferent to that need.

A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. The official's awareness of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm is not enough to establish deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The official must draw that inference. *Id.* In other words, he must know that the condition is capable of causing serious harm to the prisoner.

---

[62] Defs.' Mot. for Summ. J. at 12-13.

Only claims of unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of a prisoner rise to the level of a constitutional violation. *Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004). Deliberate indifference to a serious medical need occurs when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; (3) prison officials intentionally refuse to provide care even though they are aware of the need for it; or (4) prison officials delay necessary medical treatment for non-medical reasons. *Id; Pearson*, 850 F.3d at 538 (citations omitted).

Deprivation of necessary treatment of a serious medical need violates a prisoner's Eighth Amendment right. Medical malpractice standing alone is insufficient to establish a constitutional violation. *See Estelle,* 429 U.S. at 105–06. A mere misdiagnosis of a condition or medical need, or a disagreement as to proper medical treatment does not establish an Eighth Amendment violation. *Id.* at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). *See also Spruill,* 372 F.3d at 235 ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

A prisoner's disagreement with a treating physician's care and treatment does not typically give rise to a § 1983 cause of action. Nor does a difference of opinion between physicians. Under the deliberate indifference standard, prison medical authorities are afforded considerable latitude in diagnosing and treating inmates. *Pearson*, 850 F.3d at 538 (quoting *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979)))

(internal quotation marks omitted). *See also White v. Napoleon,* 897 F.2d 103, 110 (3d Cir. 1990) ("Certainly, no claim is presented when *a doctor* disagrees with the professional judgment of another doctor. There may, for example, be several ways to treat an illness.") (emphasis in original); *Gause v. Diguglielmo,* 339 F. App'x 132, 136 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); *Gindraw v. Dendler,* 967 F. Supp. 833, 836 (E.D. Pa. 1997) (a doctor's exercise of his professional judgment is never deliberate indifference); *Farmer v. Carlson,* 685 F. Supp. 1335, 1339 (M.D. Pa. 1988) ("[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires."). The Third Circuit has consistently rejected Eighth Amendment claims grounded on the level of professional care an inmate received, particularly where significant medical services were provided but the inmate is dissatisfied with the outcome. *See, e.g., Ham v. Greer,* 269 F. App'x 149, 151 (3d Cir. 2008) ("Ham's primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred. This simply does not rise to the level of a violation of a constitutionally protected right."); *James v. Dep't of Corr.,* 230 F. App'x 195, 197 (3d. Cir. 2007) ("Although James may have preferred a different course of treatment, his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.").

Tyner has not presented any evidence to establish that Hehnly was deliberately indifferent to his serious medical need. He claims Hehnly's attitude towards him and her questions about his release date demonstrate her deliberate indifference. Although Tyner believed that Hehnly was not sympathetic or convinced of his suffering, the undisputed facts show that she took appropriate action to address his injury. After her first

examination, she instructed the administrative assistant either to arrange an outside orthopedic consultation or to transport Tyner to the hospital for an examination. Tyner was taken for an outside consultation later that day. Hehnly followed up with Tyner after his appointment and increased his pain medication. She saw him again after she received his MRI results and instructed the administrative assistant to schedule his surgery. According to the defendants' expert physician, Dr. Gregory Hanks, Hehnly conducted an appropriate evaluation "in a very timely fashion" and obtained an "appropriately-timed" orthopedic consultation.[63] Tyner has introduced no evidence demonstrating that the treatment Hehnly provided deviated from the accepted standard of care.

Nothing in the record suggests Hehnly delayed or impeded Tyner's surgery. According to Hehnly's affidavit, the administrative assistant is responsible for coordinating outside medical appointments, not the nursing staff. PrimeCare's records show that the administrative assistant did schedule Tyner's surgery for March 20, 2018. SCI Camp Hill's records confirm that surgery was scheduled by "County Jail," but it was "cancelled secondary to transfer to state prison."[64] There is no evidence that Hehnly was involved in cancelling his surgery. Indeed, the evidence is to the contrary.

Tyner complains that Hehnly delayed his surgery. He points to her asking for his release date several times. It was not the first time Hehnly asked Tyner for his release date. Tyner's medical records also show that Hehnly asked about his release date when he sought treatment for his seasonal allergies a few months earlier.[65] There is no

---

[63] Defs.' SUF Exh. E at 3.

[64] Defs.' SUF Exh. F.

[65] Defs.' SUF Exh. C at PCM00142.

evidence linking her questions about his release date to his transfer or the rescheduling of his surgery. In fact, the record demonstrates that Hehnly had no control over when inmates were transferred, nor any continuing responsibilities for their treatment once they were transferred.[66]

At most, Hehnly may have underestimated the severity of Tyner's injury during her first examination. According to her notes, there was "[n]o obvious derangement" and his knees "appear[ed] similar."[67] An x-ray showed no fractures or other abnormalities. She thought his reaction to her minimal palpitations around his knee was "a bit extreme."[68] She diagnosed his injury as possible structural damage or a strain. She may have misjudged the severity of his injury based on her review of the x-ray, but she increased his pain medication, conducted follow-up exams and instructed the administrative assistant to schedule outside consultations and surgery. Hehnly's initial evaluation of Tyner's injury does not amount to deliberate indifference. *See Pearson*, 850 F.3d at 538 (no Eighth Amendment violation where nurse inadequately diagnosed and treated prisoner's appendicitis as a pulled muscle); *Stewart v. Pa. Dep't of Corr.*, 677 F. App'x 816, 820 (3d Cir. 2017) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993)) (misdiagnosis of fracture resulting in delayed treatment at worst amounted to medical malpractice, which is not actionable under the Eighth Amendment).

Courts have refused to find deliberate indifference where a delay in treatment did not cause any harm. *See, e.g., Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir.

---

[66] Defs.' SUF Exhs. A at ¶ 27, B at ¶ 11.

[67] Defs.' SUF Exh. C at PCM00142.

[68] *Id.*

2000) (finding no deliberate indifference where there was no evidence that any harm resulted from the delay in treatment); *Joh v. Suhey*, 709 F. App'x 729, 731 (3d Cir. 2017) (finding brief delay in examining plaintiff after his initial injury did not state a claim for deliberate indifference). Indeed, Dr. Hanks, a medical expert, opined that the delay was appropriate for his diagnosis and may even have benefited Tyner.[69]

Because the undisputed material facts demonstrate that Hehnly was not deliberately indifferent to Tyner's injury, Hehnly is entitled to judgment as a matter of law.

*Monell Claim*

A municipality may be liable under § 1983 only when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 691–95 (1978). Liability cannot be predicated on a theory of respondeat superior or vicarious liability. *Id.* at 693–94. Similarly, a private corporation that has been contracted by a prison to provide health care for inmates cannot be held liable on a respondeat superior theory. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).

PrimeCare provides medical services to inmates at Lancaster County Prison pursuant to a contract.[70] PrimeCare can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *See id.*

---

[69] Defs.' SUF Exh. E at 3.

[70] Defs.' SUF Exhs. A at ¶ 1, B at ¶ 1.

The Third Circuit has identified three situations where the acts of a government employee, or an employee of an entity acting under color of state law, are deemed the result of a policy or custom rendering the entity liable under § 1983:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale,* 318 F.3d at 584 (internal quotation marks and citations omitted).

A policy or custom may be established in two ways. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d. Cir. 1990)). A policy is created when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issued an official statement of policy." *Id.* (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)). A course of conduct may constitute a custom when "though not authorized by law, 'such practices of state officials [are] so permanent and well settled' that they operate as law." *Id.* (quoting *Monell,* 436 U.S. at 690). In both instances, the plaintiff must show "that a government policymaker is responsible by action or acquiescence for the policy or custom." *Id.* (citing *Andrews,* 895 F.2d at 1480).

Tyner argues that PrimeCare has a policy or custom that allows the transfer of inmates in serious medical conditions, delaying their medical treatment and prolonging their pain. He submitted an affidavit from another inmate who was transferred to state

custody after notifying PrimeCare of his injury, delaying his surgery.[71] Tyner contends

that in both cases, PrimeCare avoided costly surgeries, suggesting it refused to provide

adequate medical care for financial reasons. Tyner has not produced any evidence that

such a policy or custom exists or that the transfers were motivated by financial concerns.

On the other hand, PrimeCare has submitted evidence demonstrating that it has no

control over when inmates are transferred from local to state custody and no role in

providing medical treatment to inmates after they are transferred.  Moreover, PrimeCare's

administrative assistant did schedule Tyner's surgery. SCI Camp Hill canceled and

rescheduled it because he was transferred to state custody. Nothing in the record

suggests that PrimeCare was involved in the decision to delay the surgery or sought to

avoid providing Tyner with medical treatment. Similarly, even if it is true that Tyner did not

receive his pain medication as prescribed, he has not shown that PrimeCare has a policy

or custom of denying inmates medication.

According to PrimeCare's expert report, the treatment Tyner received at both

Lancaster County Prison and SCI Camp Hill was within the accepted standard of medical

care.[72] The timing of the procedure five weeks after his injury was appropriate for his

diagnosis, had no impact on his ultimate recovery and may have actually benefitted his

post-surgery outcome.[73] No reasonable jury could conclude from this evidence that

---

[71] Pl.'s Resp. Exh. 14.

[72] Even if it were true that Tyner received inadequate post-operative physical therapy, as he claims, neither PrimeCare nor Hehnly were responsible for this treatment. Tyner admits this post-surgery care occurred while he was housed at SCI Camp Hill. Pl.'s Resp. at 6-7; Pl.'s SUF at 17 ("The plaintiff has ultimately lost strength in his left leg *as a result of his transfer from the care of PrimeCare Medical, Inc.*") (emphasis added). As the defendants have shown, PrimeCare and Hehnly have no role in inmates' treatment after they are transferred to state custody.

[73] Defs.' SUF Exh. E at 3.

17

PrimeCare has any policies exhibiting a deliberate indifference to a serious medical condition.

## CONCLUSION

The undisputed material facts show that neither Hehnly nor Primecare was deliberately indifferent to Tyner's serious medical need, and they provided appropriate medical treatment. Therefore, we shall grant the defendants' motion for summary judgment.